## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DUANE BOEBEL, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>vs.<br><br>APPLE RECOVERY LLC, DOBBERSTEIN LAW FIRM LLC, BCG EQUITIES LLC, and DEBT MANAGEMENT PARTNERS LLC,<br><br>        Defendants. | Case No.: 19-cv-149<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

### INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

### JURISDICTION AND VENUE

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

### PARTIES

3.      Plaintiff Duane Boebel is an individual who resides in the Western District of Wisconsin (La Crosse County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff debts allegedly incurred for personal, family, or household purposes, namely medical debts.

5.      Defendant Apple Recovery, LLC ("Apple") is a foreign limited liability company with its principal offices located at 7776 South Pointe Pkwy, Suite 280, Phoenix, Arizona 85044.

6.    Apple is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7.    Apple is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8.    Apple is a debt collector as defined in 15 U.S.C. § 1692a.

9.    Defendant Dobberstein Law Firm, LLC ("DLF") is a Wisconsin law firm with its principal offices located at 225 South Executive Drive, Suite 201, Brookfield, Wisconsin 53005.

10.    DLF is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

11.    DLF is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

12.    DLF is engaged in the business of a debt collection law firm, using the Wisconsin civil and small claims court systems to collect debts owed to others and incurred for personal, family or household purposes.

13.    DLF is a debt collector as defined in 15 U.S.C. § 1692a.

14.    BCG Equities, LLC ("BCG") is a Wisconsin limited liability company with its principal offices located at 225 South Executive Drive, Suite 201, Brookfield, Wisconsin 53005.

15.    Upon information and belief, BCG and DLF act in concert and as affiliated entities.  The businesses are registered with the Wisconsin Department of Financial Institutions with the same registered agent, and the same address for their principal offices.

16.    BCG is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

17.    BCG is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

18.    BCG is engaged in the business of engaging its affiliate DLF to collect debts originally owed to others and incurred for personal, family or household purposes through filing civil and small claims in Wisconsin courts.

19.    BCG regularly collects debts owed to others, and is engaged in a business, the principal purpose of which is the collection of debts incurred for personal, family or household purposes.

20.    BCG is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time it acquires them.

21.    Debt Management Partners, LLC ("DMP") is a foreign limited liability company with its principal offices located at 200 John James Audubon Parkway, Suite 102, Amherst, New York 14228.

22.    DMP is engaged in the business of a collection agency, using the mails, telephone, and internet to collect consumer debts originally owed to others.

23.    DMP is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

24.    DMP regularly collects debts owed to others, and is engaged in a business, the principal purpose of which is the collection of debts incurred for personal, family or household purposes.

25.    DMP is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time it acquires them.

26.     The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

27.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Tepper v. Amos Fin., LLC,* 898 F.3d 364, 371 (3d Cir. 2018) ("In sum, Amos may be one tough gazookus when it attempts to collect the defaulted debts it has purchased, but when its conduct crosses the lines prescribed by the FDCPA, it opens itself up to the Act's penalties."); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *Torres v. LVNV Funding LLC*. 2018 U.S. Dist. LEXIS 49885, at *13-15 (N.D. Ill Mar. 27, 2018); *Hordge v. First Nat'l Collection Bureau, Inc.*, 2018 U.S. Dist. LEXIS 132435, at *12-13 (S.D. Tex. Aug. 7, 2018); *Meola v. Asset Recovery Solutions*, 2018 U.S. Dist. LEXIS 139101, at *13-18 (E.D.N.Y. Aug. 15, 2018).

28.     The primary purposes of DMP's and BCG's business, and DMP's and BCG's principal purposes, is the collection of consumer debts.  *See, e.g., Barbato v. Greystone Alliance*, App. No. 18-1042, 2019 U.S. App. LEXIS 5336, at *20 (3d Cir. Feb. 22, 2019) ("The existence of a middleman does not change the essential nature-the 'principal purpose'-of Crown's business.  As Barbato points out, Crown could buy debt for the charitable purpose of forgiving it,

4

or it could buy debt for the purpose of selling it to unrelated parties at a profit.  In both of those cases, the entity's 'principal purpose' would not be collection.").

29.    Although DMP sold the alleged debt in this instance to BCG, when DMP purchases consumer debts, its principal purpose is *collection* of debts not selling them for profit.

30.    DMP's website states:

Debt Management Partners (DMP) and our operating team has been a niche leading liquidator of delinquencies since 2004. DMP has thrived in one of the most difficult spaces in collections; we look to bring our careful brand management to your group to ensure the highest results while maintaining a tailored customer experience.

-Our operating team consists of tough professionals that have worked with major banks, hedge fund management, private lenders, payday lenders, and B2B lenders.

-Our Chief Operating Officer is a 25 year veteran of the collection industry; he has overseen thousands of employees at OSI, managed direct placements from major banks, coordinated purchasing and liquidation for hedge funds, and has sat on the boards of numerous professional trade organizations. Overseeing all aspects of account management, he maintains consistency and quality control at every step of the process.

DMP adheres to the best practices of the following professional organizations:

- Lend360
- CFSA
- Debt Buyers Association

DMP aims to bring our success in account management to lenders in order to ease their internal account strategies and increase their yield.

http://dmpcollections.com/about/ (last accessed Feb. 25, 2019).

31.    DMP's website further states:

Debt Management Partners has purchased billions of dollars in receivables across a broad spectrum of verticals. As a fully nationally licensed buyer we have a robust internal process we apply to each portfolio, our proprietary account management software tracks every facet of collections including but not limited to:

- Full call recording
- Speech to text programming that in real time highlights and flags any inappropriate conversation as it's happening
- Account status/location
- Real time payment reporting
- Manages the full account life cycle while never allowing for any data inconsistencies
- Cutting edge data security
- Full time technology team able to put together any custom data relationship required

Sell your delinquent accounts, earn returns today, and watch our professional brand management focused team convert your delinquencies back into future borrowers.

Complete the form to have our portfolio manager contact you today.

https://dmpcollections.com/sales/ (last accessed Feb. 25, 2019).

32.    Further, upon information and belief, DMP not only collects debts that it has purchased but also regularly collects debts owed to others.  DMP's website further states:

Do you have a question about an account? Did you receive a notice in the mail or a phone call you would like more information regarding?
Please note: To ensure compliance with state and federal laws pertaining to debt collection, we are unable to answer any questions or discuss any debt collection issues via email. This is an attempt to collect a debt. Any information obtained may be used for that purpose.

If you have received a notice in the mail, please direct all inquiries to the toll-free number and/or address that is located on the notice you received. Please include your DMP account number, creditor's name, and creditor's account number.

Only if you do not have a notice, you may send payment and correspondence to the following address and include the creditor's name, creditor's account number and, if available, DMP's account number. Use this address only if you do not have a notice as it may delay credit to your account.

Debt Management Partners
200 John James Audubon Pkwy
Suite 102
Amherst, NY 14228
8008839067

https://dmpcollections.com/account-holders/ (last accessed February 25, 2019).

33.    DMP's website further states:



. . .



. . .



[https://dmpcollections.com/#](https://dmpcollections.com/#) (last accessed February 25, 2019).

    34.    DMP's website further states:

Debt Management Partners has liquidated billions of dollars in receivables across a broad spectrum of verticals. As a fully nationally licensed entity we have a robust internal process we apply to each portfolio, our proprietary account management software tracks every facet of collections including but not limited to:

- Full call recording
- Speech to text programming that in real time highlights and flags any inappropriate conversation as it's happening
- Account status/location
- Real time payment reporting
- Manages the full account life cycle while never allowing for any data inconsistencies
- Cutting edge data security
- Full time technology team able to put together any custom data relationship required

Assign your delinquent accounts, start earning higher returns right away, and watch our professional brand management focused team convert your delinquencies back into future borrowers.

Complete the form to have our portfolio manager contact you today.

7

https://dmpcollections.com/management/ (last accessed February 25, 2019).

35. Upon information and belief, BCG does not have a website but a Wisconsin Circuit Court Access ("CCAP") search for "BCG Equities*" returns 1,291 civil and small claims cases filed in Wisconsin courts since January 1, 2018. Upon information and belief, all or almost all of these cases were filed to collect consumer debts.

36. BCG also engages others, including DLF, to use the mail and telephone to collect consumer debts.

37. BCG uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

38. DMP and BCG are debt collectors as defined in 15 U.S.C. § 1692a.

39. Any company meeting the definition of a "debt collector" is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf).

## **FACTS**

40. Sometime on or around May 2, 2015, Plaintiff obtained a consumer loan from Original Creditor "LoanMe, Inc." in the amount of $10,600.00.

41. Plaintiff used this loan only for personal, family, and household purposes, including paying personal bills.

42. Plaintiff thought he would be able to pay the loan back, but he was not able to do so.

43.    On or about October 12, 2017, Apple mailed a debt collection letter to Plaintiff regarding an alleged debt, owed at that time to "LoanMe, Inc." ("LoanMe").  A copy of this letter is attached to this complaint as Exhibit A.

44.    Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of a credit card, used only for personal, family, and household purposes.

45.    Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

46.    Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

47.    Upon information and belief, Exhibit A is the first written communication Defendant mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

48.    Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

**Your Rights Under Federal Law:** Unless you notify this office within thirty days after receipt of this notice that you dispute the validity of the debt or any portion thereof, we will assume the debt is valid.  If you notify us *in writing within thirty days after you receive this notice*, that you dispute the debt or any portion of the debt, we will obtain verification of the debt or a copy of the judgment against you (if a judgment has been entered) and we will mail a copy of such verification or judgment.  Upon your written request within thirty days after receipt of this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

49.    Exhibit A also contains the following:

| Client: | LoanMe, Inc. |
|---|---|
| Acct ID: | ▇7831 |
| Original Creditor: | LoanMe |
| Original ID: | ▇173 |
| Acct Bal. Due: | $10,600.00 |

Exhibit A.

9

50.     <u>Exhibit A</u> states that, as of October 12, 2017, the "Acct Bal. Due" for Plaintiff's LoanMe consumer loan was $10,600.00, the same amount as the original balance of the loan.

51.     Upon receipt of Exhibit A, Plaintiff was led to believe that the creditor of the debt had accelerated the balance of the loan by rescinding the loan agreement and waiving its right to any accrued or future interest or late fees.

52.     On or about January 22, 2019, Plaintiff received a summons and complaint in the civil action *BCG Equities, LLC v. Duane Boebel*, Case No. 18-cv-703, *filed* Dec. 17, 2018 (La Crosse County Cir. Ct.) (the "State Court Complaint").  A copy of the State Court Complaint is attached to this complaint as Exhibit B.

53.     Upon information and belief, the "Complaint" section of Exhibit B is a form "Complaint" used by DLF and BCG to attempt to collect alleged consumer debts owed to BCG, and with information specific to Plaintiff's case inserted by automatic "merge" or by hand by non-attorney staff prior to filing.

54.     Upon information and belief, at the time the State Court Complaint was filed, DLF attorney Kevin E. Skogg had not reviewed Plaintiff's file in any detail.

55.     Exhibit B states:

> 7.     The current balance due as of the date of this Complaint, including any and all accrued interest, is $15,823.71.

Exhibit B at 3.

56.     Assuming the creditor, LoanMe, had accelerated the balance of Plaintiff's consumer loan by waiving its right to interest and fees, the representation in Exhibit B that the "current balance" as of December 11, 2018 was $15,823.71 is false.

57.    Because LoanMe had waived any right to interest and fees by attempting to collect $10,600 two years after the loan was issued, the balance was $10,600.00 as of December 11, 2018.

58.    If LoanMe had not waived its right to interest and fees, then "Acct Bal. Due" stated in Exhibit A is incorrect.

59.    The State Court Complaint further states:

8.    The defendant refuses to pay this debt despite due demand having been made by BCG Equities, LLC.

Exhibit B at 3.

60.    The representation that Plaintiff "refuse[d] to pay this debt despite due demand having been made by BCG Equities, LLC" is false, deceptive, and misleading.

61.    In fact, Plaintiff had not refused any demand by BGG prior to the date the State Court Complaint was filed because Plaintiff had not received any demand from payment from BCG or DLF.

62.    In fact, Plaintiff did not receive any contact from DLF or BCG regarding this alleged debt until he received the *already-filed* State Court Complaint.

63.    The documents attached to the State Court Complaint represent that BCG took assignment of this alleged debt on or about November 5th, 2018.  Exhibit B at 11 ("Exhibit D Assignment and Bill of Sale" from DMP to BCG)

64.    Assuming BCG or DLF attempted to contact Plaintiff by telephone immediately upon taking assignment, BCG or DLF would have been required to send Plaintiff a written notification of his rights to dispute the debt (the "validation notice") within five days.  15 U.S.C. § 1692g(a).

65.    Plaintiff did not receive any written notification of his rights to dispute the debt.

66.    Even assuming BCG and/or DLF *had* mailed Plaintiff a dunning letter immediately upon BCG taking assignment on November 5th, 2018, Plaintiff could not have received this letter until about November 8th, 2018.

67.    Pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g, the consumer has thirty days from receipt of the statutory validation notice to *mail* a written dispute, which triggers the requirement that the debt collector either cease collection or mail the consumer verification of the debt or a copy of a judgment against the consumer and the name address of the original creditor, if different from the current creditor.  15 U.S.C. § 1692g(b); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997).

68.    Even assuming Plaintiff *did* receive a collection letter from DLF on Nov. 8th, 2018, Plaintiff would have had until December 8th, 2018 to mail his written dispute to DLF and/or BCG.

69.    December 8th, 2018 was a Saturday.  If Plaintiff mailed a written dispute on December 8th, 2018, DLF and/or BCG would not have received the dispute letter until on or after December 12th, 2018.

70.    The State Court Complaint, which states that Plaintiff "refuses to pay this debt despite due demand having been made **by BCG Equities, LLC**" is dated December 11th, 2018.

71.    The representation that due demand was made prior to BCG and DLF filing the State Court Complaint is materially false, deceptive, and misleading.

72.    A CCAP search for "BCG*" returns 282 actions filed during the period between November 5th, 2018 and December 17th, 2018.  Upon information and belief, many of these actions were filed regarding alleged debts that were purchased in the portfolio of accounts that

DMP assigned to BCG along with Plaintiff's alleged LoanMe debt.  *See,* Exhibit B at 11 (describing the portfolio as containing 120 accounts).

73.     Further, the State Court Complaint represents that LoanMe assigned "[a]ll of [LoanMe's] right, title, and interest in" the alleged debt to DMP on or about February 26, 2018, and that DMP assigned its "rights, title, and interest in" the alleged debt to BCG on or about November 5th, 2018.  Exhibit B at 9-11.

74.     Exhibit B also states that the "BalanceSoldDMP" was $10,600.00.  Exhibit B at 12.

75.     LoanMe had waived all prior interest and fees, and had waived its right to collect future interest and fees prior to assigning the alleged debt to DMP.  *See, e.g., Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103 (N.D. Ill. 2014).

76.     Upon information and belief, DMP falsely represented to BCG that, when BCG took assignment of the alleged debt, neither DMP nor LoanMe had waived the right to collect accrued and future interest and fees.

77.     Further, the State Court Complaint represents that the alleged debt had accrued $55.00 in "OtherChrgsDue," which arose from a "chargeofffee" rather than any "LateChrgsDue."  Exhibit B at 12.

78.     Assuming LoanMe did not waive its right to collection of fees and interest, the alleged debt was a consumer credit transaction, and even assuming Plaintiff agreed to a "chargeofffee" in the amount of $55.00, collection of such a fee is plainly prohibited by the Wisconsin Consumer Act.  *See,* Wis. Stat. §§ 422.202 and 422.203 (allowing delinquency charges of not more than the lesser of $10 or 5 percent of the unpaid amount *of a given installment*).

79.    Further, upon information and belief, Kevin E. Skogg ("Skogg"), the individual attorney who filed and signed the State Court Complaint did not exercise professional judgment in reviewing the case and filing the complaint.

80.    Upon information and belief, Skogg performed no review, or only a cursory review, of the file before filing the State Court Complaint.  *See, e.g., Bahena v. Jefferson Capital Sys., LLC*, Case No. 17-cv-461-jdp, 2019 U.S. Dist. LEXIS 13531, at *31 (W.D. Wis. Jan. 29, 2019) (whether attorney who filed state court collection complaint "actually exercised professional judgment is a disputed question of fact to be resolved by the jury.").

81.    Upon information and belief, if Skogg had actually reviewed the account, he would have known that LoanMe had previously waived all interest and fees, and that because the "BalanceSoldDMP" was only $10,600.00, BCG had no right to interest and fees.

82.    Upon information and belief, if Skogg had actually reviewed the account, he would have known that BCG did not make any demand for payment from Plaintiff before Skogg filed the State Court Complaint.

83.    Plaintiff was confused and misled by Exhibit A.

84.    The unsophisticated consumer would be confused and misled by Exhibit A.

### The FDCPA

85.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers'

allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

86.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e).  Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices.  *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

87.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

88.    15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of— the character, amount, or legal status of any debt."

89.    15 U.S.C. § 1692e(3) specifically prohibits "the false representation or implication that any individual is an attorney or that any communication is from an attorney."

90.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

91.    15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

92.    15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

93.    15 U.S.C. § 1692g states, in part:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

94.    The Seventh Circuit has held that initial collection letters must clearly state the amount of the debt.  *Miller*, 214 F.3d at 876; *Chuway*, 362 F.3d at 949.

95.    Failure to disclose that the account was accruing interest is ambiguous as to the amount and character of the debt. *See Spuhler*, 2017 U.S. Dist. LEXIS 210895, at *19-20 (triable issue of fact as to whether the collection letter is misleading under 15 U.S.C. §§ 1692e and 1692f).

96.    Because there is a triable issue as to whether failure to disclose that the account was accruing interest is misleading as to the amount of the debt, it is necessarily confusing and ambiguous, and therefore violates 15 U.S.C. § 1692g(a)(1) as a matter of law.  *See Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 687 (7th Cir. 2017) ("When assessing whether a dunning letter violates the FDCPA, whether an unsophisticated consumer would find certain

debt-collection language misleading is often a question of fact. . . . Where the FDCPA requires

clarity, however, ambiguity itself can prove a violation.").

## COUNT I – FDCPA

97.    Count I is brought against Apple.

98.    Plaintiff incorporates by reference as if fully set forth herein the allegations

contained in the preceding paragraphs of this Complaint.

99.    Assuming LoanMe had not waived its right to interest and fees, Exhibit A does

not clearly and accurately state the amount of the debt.

100.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, and

1692g(a)(1).

## COUNT II – FDCPA

101.    Count II is brought against Defendants BCG, DMP, and DLF in the alternative to

Count I.

102.    Plaintiff incorporates by reference as if fully set forth herein the allegations

contained in the preceding paragraphs of this Complaint.

103.    Assuming LoanMe had waived its right interest and fees, Exhibit B overstates the

amount of the debt.

104.    DMP represented to BCG and DLF that they could collect interest and fees even

though LoanMe had waived any right to such interest and fees.

105.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1),

and 1692g(a)(1).

## COUNT III – FDCPA

106.    Count II is brought against Defendants BCG and DLF.

18

107.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108.    BCG and DLF falsely represented that Plaintiff refused to pay the debt upon demand by BCG.

109.    In fact, neither BCG nor DLF had made demand to Plaintiff prior to filing the State Court Complaint.

110.    BCG and DLF falsely represented the degree of attorney involvement at the time of filing the State Court Complaint.

111.    If an attorney had actually reviewed the account history to the degree that the State Court Complaint represents, the State Court Complaint would not have attempted to collect the interest and fees that had been waived when the debt was sold to DMP.

112.    If an attorney had actually reviewed the account history to the degree that the State Court Complaint represents, the State Court Complaint would not have represented that Plaintiff refused to pay the debt upon demand by BCG.

113.    Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(3), 1692e(10), and 1692f.

## CLASS ALLEGATIONS

114.    Plaintiff brings this action on behalf of a Class consisting of: (a) all natural persons in the State of Wisconsin (b) whose accounts were assigned from DMP to BCG along with Plaintiff's alleged LoanMe debt, (c) and on whose accounts DLF filed a lawsuit with a state court complaint in the form of Exhibit B on behalf of BCG, (d) seeking to collect a debt that was incurred for personal, family, or household purposes, (e) where the lawsuit was filed on or before December 17, 2018.

115.    The Class is so numerous that joinder is impracticable.

116.    Upon information and belief, there are more than 50 members of the Class.

117.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit B violates the FDCPA and/or the WCA.

118.    Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

119.    Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

120.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

121.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)    actual damages;

(b)    statutory damages;

(c)    injunctive relief;

(d)    attorneys' fees, litigation expenses and costs of suit; and

(e)    such other or further relief as the Court deems proper.

Dated:  February 25, 2019

**ADEMI & O'REILLY, LLP**

By:    /s/  Jesse Fruchter                
            John D. Blythin (SBN 1046105)
            Mark A. Eldridge (SBN 1089944)
            Jesse Fruchter (SBN 1097673)
            Ben J. Slatky (SBN 1106892)
            3620 East Layton Avenue
            Cudahy, WI 53110
            (414) 482-8000
            (414) 482-8001 (fax)
            jblythin@ademilaw.com
            meldridge@ademilaw.com
            jfruchter@ademilaw.com
            bslatky@ademilaw.com